UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LOUIS H. WANG,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN EQUITY<br>INVESTMENT LIFE INSURANCE<br>COMPANY,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:20-cv-01728-JPB |

### ORDER

Before the Court is American Equity Life Insurance Company's ("AEI") Motion to Dismiss ("Motion"). ECF No. 17. Having reviewed and fully considered the papers filed therewith, the Court finds as follows:

### I.   BACKGROUND

Plaintiff Louis H. Wang ("Wang") filed a complaint against AEI in connection with an annuity he purchased from AEI's agent, Winston Wade Turner ("Turner"). The Complaint alleges that Turner was a "trusted financial professional" who previously handled investments and insurance for Wang. However, Turner proved to be the opposite of trustworthy. The Financial Industry Regulatory Authority ("FINRA") ultimately banned Turner from working in the

industry, and a court sentenced Turner to thirty-three months in prison and ordered him to pay over $800,000 in restitution for fraudulent transactions in clients' accounts.

The Complaint alleges that Turner induced Wang to surrender a MetLife annuity purchased only eleven months earlier and incur almost $70,000 in penalties in exchange for an AEI annuity. Turner promised that the AEI annuity would pay a 10% upfront premium bonus, an additional 2% bonus annually for the first three years and a 6.5% guaranteed rate of annual interest. He also told Wang that he would fare better with the AEI annuity despite the surrender penalties. AEI issued the annuity to Wang on November 1, 2013 (the "AEI Annuity").

Wang asserts that Turner forged certain documents necessary to issue the AEI Annuity, including the application, suitability of investment and benefit rider forms. He contends that these documents should have raised "red flags" because they were dated three days before Turner was appointed to serve as an agent for AEI.

Wang also alleges that Turner withheld a copy of the AEI Annuity policy from him to prevent him from learning that the benefits Turner promised for switching to the AEI Annuity were fictitious. Wang, however, received annual statements from AEI. Wang met with Turner as often as several times per quarter

between 2013 and 2016 and states that, at those meetings, Turner convinced him that he had received more than the promised returns on the AEI Annuity and deterred him from contacting AEI directly.

AEI terminated Turner's appointment in February 2016, shortly before FINRA filed the enforcement action against him. AEI did not notify Wang of Turner's termination or the enforcement action.

Wang eventually contacted AEI directly in or around December 2016 after he was unsuccessful in reaching Turner. At that time, AEI told Wang that he had received a 10% upfront bonus as well as a 6.5% guaranteed rate of return, but the 2% additional bonus Turner had allegedly promised for the first three years of the AEI Annuity was not part of his contract. Wang requested a copy of the contract so he could confirm the information AEI provided. Wang claims he did not learn that he was a victim of Turner's fraud until 2017.

AEI seeks to dismiss the Complaint on the grounds that all of Wang's claims are barred by the four-year applicable statutes of limitations and because Wang has failed to state a claim under each count of the Complaint.

In response, Wang implicitly acknowledges that the applicable statutes of limitations have run on his claims but asserts that the limitations periods were tolled based on AEI's fraudulent actions. He claims that Turner used his position

3

of trust to deter him from uncovering the fraud, and the limitations period for each claim therefore did not begin to run until 2017, when he discovered the fraud.

AEI replies that the statutes of limitations were not tolled until 2017 because the facts necessary to discover the alleged fraud were available to Wang as early as November 2014, when he received his first annual statement. AEI also contends that Wang has not demonstrated that AEI is liable for Turner's actions.

AEI's Motion is accompanied by copies of the AEI Annuity application and contract referenced in the Complaint as well as the 2014-2019 annual statements. AEI offers these documents for the Court's consideration because it contends they are central to Wang's claims, and their authenticity is not in dispute. Wang does not dispute that the documents are central to his claims or that they are authentic.[1]

---

[1] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). *See also Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is . . . properly considered, provided that its contents are not in dispute."); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). Because the core of the parties' dispute is whether Wang received the returns on the AEI Annuity Turner allegedly promised, the annuity contract and the accompanying annual statements are central to Wang's claims. The Court will

The first annual statement is dated November 1, 2014.  That statement and all others reflect that Wang was paid the 10% premium bonus Turner allegedly promised and 6.5% in annual interest.  The statements, however, do not reflect a 2% additional bonus.

## II.   DISCUSSION

### A.   Standard of Review

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  *Traylor v. P'ship Title Co., LLC*, 491 F. App'x 988, 989 (11th Cir. 2012).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief[, however,] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement.") (internal punctuation omitted) (quoting *Twombly*, 550 U.S. at 557).

---

therefore consider them without converting AEI's Motion into one for summary judgment.

Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. "This standard does not require a party to plead facts with such particularity to establish a significant probability that the facts are true, rather, it requires a party's pleading of facts to give rise to a 'reasonable expectation that discovery will reveal evidence [supporting the claim].'" *Burch v. Remington Arms Co., LLC*, No. 2:13-cv-00185, 2014 WL 12543887, at *2 (N.D. Ga. May 6, 2014) (quoting *Twombly*, 550 U.S. at 555) (alteration in original). *See also Twombly*, 550 U.S. at 570 (dismissing complaint because the plaintiffs did not state facts sufficient to "nudge[] their claims across the line from conceivable to plausible").

At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (*Iqbal*, 556 U.S. at 678) and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Traylor*, 491 F. App'x at 990 (quoting *Iqbal*, 556 U.S. at 678).

**B.     Legal Analysis**

Since Wang does not dispute that the applicable statutes of limitations have expired for each of his claims, absent tolling, the resolution of AEI's Motion with

respect to this defense turns on whether the limitations periods were tolled by AEI's alleged fraud.

Under Georgia law,[2] actual fraud that tolls the statute can arise in two circumstances. *See Shipman v. Horizon Corp.*, 267 S.E.2d 244, 246 (Ga. 1980). First, where actual fraud is the gravamen of the action, the statute of limitations is tolled until the plaintiff discovers the fraud or should have done so by exercising reasonable diligence. *Id*. No other independent fraudulent act is required to toll the statute. *Id*.

Second, where the gravamen of the action is not fraud, there must be a separate, independent, actual fraud that prevents the plaintiff from bringing the action. *Id*. *See also Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 507 S.E.2d 411, 413 (Ga. 1998) (explaining that the plaintiff must show that "the defendant concealed information by an intentional act," and a mere failure to disclose is not sufficient absent a confidential relationship or other duty to disclose). Either way, actual fraud is a requirement for tolling.

"To prove fraud in Georgia, the following five elements must be established: '(1) false representation made by the defendant; (2) scienter; (3) an intention to

---

[2] The parties' briefs are silent on the choice of law question but rely on Georgia law. Since it does not appear from the record before the Court that this conclusion is incorrect, the Court will apply Georgia law here.

7

induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; [and] (5) damage to the plaintiff.'" *Sweet City Landfill, LLC v. Lyon*, 835 S.E.2d 764, 772 (Ga. Ct. App. 2019) (quoting *Romedy v. Willett Lincoln-Mercury, Inc.*, 220 S.E.2d 74 (Ga. Ct. App. 1975)).

Additionally, Federal Rule of Civil Procedure 9(b) requires a complaint to state with particularity the circumstances constituting the fraud.

> To comply with Rule 9(b), a complaint must set forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 638 (11th Cir. 2010). A complaint that fails to satisfy these requirements must be dismissed. *See Henderson v. Sun Pharm. Indus., Ltd.*, No. 4:11-cv-0060, 2011 WL 4024656, at *6 (N.D. Ga. June 9, 2011) (dismissing a complaint because "[a]fter *Iqbal* and under Rule 9(b), [the] [p]laintiff's broad, conclusory allegations are plainly inadequate to state a claim for fraud").

As set forth in *Shipman*, the statute of limitations may be tolled for Wang's actual fraud claims (fraudulent misrepresentations under Count III, fraudulent omissions under Count IV and constructive fraud under Count VI) until he

discovered the fraud or should have done so by exercising reasonable diligence. 267 S.E.2d at 246.  But there must be a viable claim for fraud.  *See id*.

Here, the Complaint's assertions that AEI "made materially false representations to [Wang]" or "failed to disclose material facts to [Wang] in connection with the Annuity," without any factual explanation of the who, what, when, where and how of the representations or omissions, are exactly the type of formulaic recitation of the elements of a cause of action that *Twombly* prohibits. For example, there are ***no*** facts supporting the allegation that AEI, as opposed to Turner, made false representations or failed to disclose material information to Wang in connection with the sale of the AEI Annuity.  When the conclusory factual and legal allegations in the Complaint are set aside, the remaining allegations are inadequate to satisfy Wang's burden on his fraud claims.

Additionally, the conclusion that Wang had a confidential relationship with AEI, which imposed a greater duty on AEI to disclose FINRA's investigation of Turner or his discharge, is not supported by facts.  The Complaint is devoid of any allegations showing AEI had "a controlling influence over the will, conduct, and interest of [Wang]" that would establish a confidential relationship or otherwise impose an independent duty to disclose those facts to Wang.  O.C.G.A. § 23-2-58. Moreover, "[i]t is well settled [in Georgia] that 'there is no fiduciary relationship

9

between the insured and the insurer or the insurer's agent.'"³ *Nash v. Ohio Nat. Life Ins. Co.*, 597 S.E.2d 512, 518 (Ga. Ct. App. 2004).

Since the Complaint focuses on Turner's actions, Wang appears to be conflating Turner's potential liability for the actions alleged with AEI's simply because Turner was an agent of AEI. But as AEI points out, AEI and Turner cannot be considered one and the same, and Turner's actions cannot be imputed to AEI. "'Independent insurance agents or brokers are generally considered the agent of the ***insured***, not the insurer.'" *Se. Exp. Sys., Inc. v. S. Guar. Ins. Co. of Ga.*, 482 S.E.2d 433, 435 (Ga. Ct. App. 1997) (emphasis added). The allegations in the Complaint that Turner was "appointed to sell [AEI] products" and that he took certain actions to earn "a higher commission rate" from AEI reflect an independent agent relationship not sufficient to impute Turner's actions to AEI. *Compare Park-N-Ticket, Inc. v. Fireman's Fund Ins. Co.*, No. 1:11-cv-03096-JOF, 2013 WL 11927706, at *7 (N.D. Ga. May 8, 2013) (stating that "connect[ing] insureds with

---

³ The allegations in the Complaint are arguably not sufficient to demonstrate a special relationship even as to Turner. Wang's claims that he "trusted and followed Turner's advice and recommendation" and that Turner "used his position of trust" to manipulate him do not necessarily establish a confidential or special relationship with Turner. "[T]he fact '[t]hat two people have transacted business in the past and have come to repose trust and confidence in each other as the result of such dealings is not sufficient, in and of itself, to warrant a finding that a confidential relationship exists between them.'" *Martin v. Chasteen*, 841 S.E.2d 157, 161 (Ga. Ct. App. 2020).

an insurance company and procur[ing] coverage through a policy" are actions "typical of those taken by a completely independent insurance broker"), *with Sumitomo Marine & Fire Ins. Co. of Am. v. S. Guar. Ins. Co. of Ga.*, 337 F. Supp. 2d 1339, 1353 (N.D. Ga. 2004) (finding that the agent stood in the insurance company's shoes because he signed the company's insurance policies, declaration pages and certificates of insurance as an "authorized representative" of the company). Indeed, other than referring to Turner in a conclusory fashion as AEI's "agent" throughout the Complaint, Wang has not alleged any facts that would nudge the inference—that Turner was something more than an independent agent—across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570.

Based on the foregoing analysis, the Court finds that Wang has failed to state a claim for fraud against AEI. As such the first *Shipman* circumstance does not apply, and the various statutes of limitations are not tolled on that basis.

The second *Shipman* circumstance, which concerns whether a defendant fraudulently concealed the wrongful action, similarly does not save Wang's claims. Wang does not dispute that he learned as early as November 2014—when the first annual statement was provided to him—that he did not receive the additional 2% bonus that Turner allegedly promised. That statement showed that Wang was

given a "Premium Bonus" totaling 10% of his initial premium and that the account accumulated annual interest at the rate of 6.5%. There was no indication of an additional 2% premium bonus. Subsequent annual account statements (through 2019) likewise informed Wang that a 2% bonus was not applied to his account.

Wang attempts to negate his knowledge of the alleged fraud by asserting that he reached out to Turner when he received his statements and throughout 2013-2016, but Turner "convinced" him that he had received the promised returns, and the AEI Annuity was performing better than Turner had promised. This argument, however, is unavailing. When "'the means of knowledge are at hand and equally available to both parties[,] . . . [and] the purchaser does not avail himself of these means, he will not be heard to say, in impeachment of the contract, that he was deceived by the representations of the seller.'" *Lorick v. Na-Churs Plant Food Co.*, 257 S.E.2d 332, 334 (Ga. Ct. App. 1979). In other words, "'[t]he law does not afford relief to one who suffers by not using the ordinary means of information, whether the neglect is due to indifference or credulity.'" *McClung Surveying, Inc. v. Worl*, 541 S.E.2d 703, 706–07 (Ga. Ct. App. 2000) (finding that the plaintiffs were on notice that the defendant's flood zone analysis may have been inaccurate when their house flooded the first time, even if county officials later told them that their house was not in the flood zone). *See also*, *Hamburger v. PFM Cap. Mgmt.*,

*Inc.*, 649 S.E.2d 779, 785 (Ga. Ct. App. 2007) (finding that the statute of limitations was not tolled where the plaintiff admitted to receiving and reviewing quarterly statements that disclosed the alleged issues with her account).

In this case, Wang had access to the statements and acknowledged that the statements did not reflect the 2% bonus. His blind reliance on Turner's explanations to the contrary cannot serve to toll the statute of limitations.

Further, "[t]he general rule is that insureds are chargeable with knowledge of the contents of their policies." *Se. Sec. Ins. Co. v. Empire Banking Co.*, 498 S.E.2d 282, 284 (Ga. Ct. App. 1998). Thus, they are "'presumed to know [the] conditions [of their policies] if they intend to rely upon [the] benefits, or else they must find out those conditions.'" *Id*.

Again, Wang had possession of the annual statements and could have obtained a copy of his policy when he doubted the veracity of Turner's representations—as he did in December 2016. Yet, he chose to do nothing. He has not demonstrated reasonable diligence to protect his interests in this case, and he cannot seek the benefit of tolling to compensate for his failure in this regard.[4] Accordingly, to the extent the second *Shipman* circumstance applies, any tolling

---

[4] Contrary to Wang's argument, this is not necessarily a question for the jury. *See McClung*, 541 S.E.2d at 706 (stating that "'[a] party may fail to exercise due diligence as a matter of law'").

13

based on fraudulent concealment ended at the latest in November 2014, when Wang received his first annual statement.  Therefore, the four-year statutes of limitations applicable to each of Wang's claims expired in November 2018, and the Complaint, which was filed in February 2020, is time-barred.[5]  AEI's Motion (ECF No. 17) is **GRANTED**, and the Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 1st day of March, 2021.

J. P. BOULEE
United States District Judge

---

[5] In light of this ruling, the Court need not reach AEI's other arguments for dismissal.  The Court also need not address any dependent claims for relief (*e.g.* Count IX for attorneys' fees and expenses).